UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ZURICH INS. CO., et al.,, <br><br> Plaintiffs, <br><br> v. <br><br> IRONSHORE SPECIALTY INS. CO., <br><br> Defendant. | No. 2:14-cv-00060-TLN-KJN <br><br><br> **ORDER** |

This matter is before the Court pursuant to Plaintiff Northern Insurance Company of New York's ("Plantiff") Motion for Partial Summary Judgment (ECF No. 12). Defendant Ironshore Specialty Insurance Company ("Defendant") has filed an opposition to Plaintiff's motion (ECF No. 13) and in turn Plaintiff has filed a reply (ECF No. 15). The Court has carefully considered the arguments presented by both parties and for the reasons stated below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 12) is hereby DENIED.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This matter involves a coverage dispute between insurers arising from a group of settled and resolved construction defect matters. (Statement of Undisputed Facts, 13-4 No. 1.) Defendant issued Sherman Loehr an insurance policy,[1] which was effective from October 31, 2009, through October 31, 2010. (ECF No. 13-4 at No. 10.) In 2009, the following litigation

---

[1]   Defendant issued Sherman Loehr Policy No. 017U00905001.

ensued: *Peterson v. Del Webb California, Inc.*, Placer County Case No. SCV27125 ("Peterson"). (ECF No. 13-4 at No. 1.)  *Peterson* was brought by homeowners in a housing development who alleged various construction defects against Del Webb California. Inc. ("Del Webb").  (ECF No. 13-4 at No. 1.)  On October 12, 2010, Del Webb filed a cross-complaint against Sherman Loehr, and other subcontractors, alleging that they were liable for the claims asserted against Del Webb. (ECF No. 13-4 at No. 8.)

On or around November 2010, Defendant received a tender on behalf of Sherman Loehr as to the *Peterson* matter.  (ECF No. 13-4 at No. 4.)  Midlands Claim Administrators ("Midlands"), a third party administrator, received the tender and investigated the matter on behalf of Defendant.  (ECF No. 13-4 at No. 14.)  Midlands sent a report to Defendant, dated December 16, 2010, in which Midlands recommended that Defendant disclaim Sherman Loehr's tender because the construction project at issue was completed prior to Defendant issuing Sherman Loehr's insurance policy and thus was not covered by the policy.  (ECF No. 13-4 at No. 15.)  The Policy at issue includes the following exclusion:

> This insurance does not apply to any "bodily injury" or "property damage": (1) which first existed, or is alleged to have existed, prior to the inception of this policy. "Property damage" from "your work", [sic] or the work of any additional insured, performed prior to the policy inception will be deemed to have existed prior to the policy inception, unless such "property damage" is sudden and accidental and takes place within the policy period.

(*See* Continuous or Progressive Injury or Damage Exclusion, ECF No. 12-5 at 32.)  On behalf of Defendant, Midlands issued a declination letter dated December 16, 2010.  (ECF No. 13-4 at No. 16.)

On May 14, 2013, Plaintiffs American Zurich Insurance Company, Northern Insurance Company of New York and Steadfast Insurance Company (collectively referred to as "Plaintiffs") filed the present action against Defendant in Sacramento County Superior Court.  Defendant thereafter removed the action to this Court.  Among other things, Plaintiffs allege that Defendant owed Sherman Loehr a duty to defend the *Peterson* action because the information and documentation available to Defendant at the time of tender confirms that a potential for coverage

2

existed as to Sherman Loehr.[2] (ECF No. 12-1 at 6.) Plaintiff Northern Insurance Company of New York[3] has moved this Court for summary judgment as to its cause of action for declaratory judgment as to Defendant's duty to defend.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288−289 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

---

[2] The Court notes that Plaintiffs' Second Amended Complaint alleges sixty-three causes of action. (*See* ECF No. 10.) Plaintiff has only moved for summary judgment as to Cause of Action Number Twenty-two for declaratory judgment as to Defendant's duty to defend its insured Sherman Loehr. (ECF No. 10 at ¶¶ 165–179.)

[3] Because the motion for summary judgment was brought solely by Plaintiff Northern Insurance Company of New York, any reference to Plaintiff in its singular form refers to Northern Insurance Company of New York.

1  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
2  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
3  the nonmoving party. *Id.* at 251−52.

4  In the endeavor to establish the existence of a factual dispute, the opposing party need not
5  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
6  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
7  trial." *First Nat'l Bank*, 391 U.S. at 288−89. Thus, the "purpose of summary judgment is to
8  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
9  trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963
10 amendments).

11 In resolving the summary judgment motion, the court examines the pleadings, depositions,
12 answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.
13 R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982). The evidence
14 of the opposing party is to be believed, and all reasonable inferences that may be drawn from the
15 facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at
16 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
17 obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*
18 *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th
19 Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing
20 party "must do more than simply show that there is some metaphysical doubt as to the material
21 facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational
22 trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587
23 (internal quotations omitted).

24 **III.   ANALYSIS**

25 A liability insurer owes a broad duty to defend its insured against claims that create a
26 potential for indemnity. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)
27 (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966)). A "'carrier must defend a suit which
28 potentially seeks damages within the coverage of the policy.'" *Id.* (quoting *Gray*, 65 Cal. 2d at

275).  The initial determination as to whether an insurer owes a duty to defend is usually made by comparing the allegations of the complaint with the terms of the policy.  *Id.*  Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.  *Id.*  Conversely, "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability."  *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995)).  Simply put, "where there is no potential for coverage, there is no duty to defend."  *La Jolla Beach & Tennis Club, Inc. v. Indust. Indem. Co.*, 9 Cal. 4th 27, 39 (1994).

If a party claiming coverage "shows a potential for coverage under the coinsurer's policy, the coinsurer must conclusively prove with undisputed evidence that no coverage existed under the policy."  *PMA Capital Ins. Co. v. Am. Safety Indem. Co.*, 695 F. Supp. 2d 1124, 1125 (E.D. Cal. 2010).  Where a party is seeking declaratory relief on a motion for summary judgment, if the evidence adduced does not permit the court to eliminate the possibility that the insured's conduct falls within the coverage of the policy, "the duty to defend is then established, absent additional evidence bearing on the issue."  *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 301 (1993) (quoting *Horace Mann Ins. Co.*, 4 Cal. 4th at 1085).  Thus, in this unique circumstance raising a triable issue of material fact will not defeat summary judgment.  *PMA Capital Ins. Co.*, 695 F. Supp. 2d at 1125.  "Any doubt as to whether the insurer has a duty to defend is resolved in the insured's favor."  *Id.* (quoting *Horace*, 4 Cal. 4th at 1081).

In the instant case, Plaintiff asserts that Defendant could not determine that the damage complained of in *Peterson* did not fall within Defendant's policy.  Plaintiff offers three arguments in support of its argument that Defendant had a duty to defend.  First, Plaintiff asserts that the "damage" could have occurred after the alleged defective work performed by Sherman Loehr and during the policy; thus there is a possibility of coverage.  (ECF No. 12-1 at 10–11.)  Second, Plaintiff asserts that the original *Peterson* complaint was devoid of factual information and thus Defendant could not foreclose the possibility that the damage was "sudden and accidental" and took "place within the policy period," as to usher it within the policy's coverage.  (ECF No. 15 at 10–11.)  Third, Plaintiff asserts that the exclusions within Defendant's policy are unenforceable.

(ECF No. 15 at 14–15.)

As to Plaintiff's first assertion, the Court finds that the case law relied upon by Plaintiff is distinguishable. First, the Court notes that the majority of case law cited by Plaintiff is from the District Court of Nevada and does not apply California law which governs this case. (*See* ECF No. 12-1 at 11 (citing *Maryland Cas. Co. v. American Safety Ins. Co*, No. 2:10–cv–02001–MMD–PAL, 2013 WL 1007707 (D. Nev. Mar. 12, 2013); *N. Ins. Co. of New York v. Nat'l Fire & Marine Ins. Co.*, 953 F. Supp. 2d 1128 (D. Nev. 2013); *United Nat. Ins. Co. v. Assurance Co. of Am.*, No. 2:10–cv–01086–MMD–RJJ, 2012 WL 1931521 (D. Nev. May 29, 2012)).) Second, Plaintiff asserts that *United National Insurance Company* is analogous to the matter at hand and urges this Court to adopt its reasoning. Plaintiff's reliance on *United Nat. Ins. Co.* is misplaced because the facts at issue here are distinguishable. The policy at issue in *United* excluded from coverage "property damage that occurred, began to occur, or was alleged to occur before the inception of the policy." *United Nat. Ins. Co. v. Assurance Co. of America*, 2012 WL 1931521, at *3. Thus, the time of damage determined whether an incident fell within the policy. The *United* court reasoned that a construction *defect* could occur before a policy is instituted, but that the *damage resulting from the defect* could be covered if it occurred within the policy period:

> For example, an improperly mounted chandelier could fall years after it was improperly mounted, yet the damage to the floor would not occur until the chandelier actually fell. Thus, the Court finds that just because the defects existed before the National Fire Policy incepted, it does not mean that the property damage also occurred at that time.

*Id.* at *4. In contrast, the policy here excludes damage that occurs within the policy if it is caused by defective work that was performed or existed prior to the policy inception. (*See* ECF No. 12-5 at 32.) Accordingly, *United* is not on all fours with the instant case despite Plaintiff's assertions.

Second, Plaintiff asserts that Defendant could not have concluded that the damages were excluded from the limited information in the *Peterson* Complaint. The First Amended Complaint includes but is not limited to the following allegations:

> 20. PLAINTIFFS are informed and believe and thereon allege that the SUBJECT PROPERTIES were defective when they left DEVELOPER DEFENDANTS' possession and control. The

6

> defective conditions in the SUBJECT PROPERTY include, but are not limited to: concrete slabs, stucco, water intrusion membranes, roofs, floors/floor coverings, walls, ceilings, drywall, cabinets, doors and windows, sliding glass doors, shear walls, concrete flatwork, sheet metal, insulation, electrical systems, heating, ventilation and air conditioning systems, pavement system, plumbing and plumbing fixtures, irrigation systems, soils, grading, framing, stairs, foundations, garage doors, shower doors, mirrors, drainage, paint, fences, fireplaces/chimneys, decks, and structural systems, among other areas.
>
> 21. PLAINTIFFS are informed and believe and thereon allege that DEVELOPER DEFENDANTS and each of them, as mass developers, sellers, and/or mass builders of the subject structures, knew that the SUBJECT PROPERTIES would be sold to and used by members of the general public for the purpose of residential units, and said DEVELOPER DEFENDANTS knew or reasonably should have known that the persons who would purchase said units would do so without inspection for the defects set forth herein.
>
> 23. These defective components have damaged other systems or other components in the houses, property and subject project.

(ECF No. 12-6 at ¶¶ 20, 21, 23.) Plaintiff's main assertion is that the Complaint fails to allege specific dates as to when the damage occurred, and thus Plaintiff contends Defendant was unable to determine that the alleged damages were not potentially covered by the policy. Plaintiff asserts Defendant had a duty to defend because it could not determine that the damage was not "sudden and accidental." (ECF No. 15 at 10–11.)

In opposition, Defendant does not dispute the lack of dates within the *Peterson* Complaint, but points to the Complaint itself and extrinsic evidence showing that the construction of all of the homes involved in the *Peterson* case were completed in 2003, well before the inception of the 2009 policy. (*See Peterson* Compl., ECF No. 12-6 at ¶ 24 ("These homes were sold to plaintiffs prior to 2003"); Notice of Completion Table within Def.'s Opp., ECF No. 13 at 3–4.)

After reviewing the facts alleged in the *Peterson* Complaint, the Court finds that the only rational interpretation of the allegations is that the claim was predicated on faulty construction. Common sense dictates that where a plaintiff has alleged that they were given a product in a defective condition that they are not alleging the opposite, i.e. that damage was sudden and accidental. Moreover, Plaintiff's assertion that Defendant failed to investigate the alleged defects to determine whether they were potentially covered by the policy is contradicted by Defendant

7

hiring Midland, who issued the December 16, 2010, report to Defendant, concluding the damage was excluded. (*See* ECF No. 13-4 at No. 15.) In fact, Plaintiff has not pointed to any evidence available at the time that litigation was commenced against Sherman Loehr that would contradict Defendant's determination that the alleged damage was excluded from the policy. Thus, Plaintiff's assertion that the alleged damage could fall within the sudden and accidental exception to the prior work exclusion is unfounded.

Finally, Plaintiff argues that this Court should find that the provisions within the policy "create a material conflict within the policy so as to make the provision unenforceable." (ECF No. 15 at 14.) In support, Plaintiff cites *Pennsylvania Gen. Ins. Co. v. Am. Safety Indem. Co.*, 185 Cal. App. 4th 1515 (2010). However, this Court's reading of *Pennsylvania Gen.* does not comport with Plaintiff's assertion. In *Pennsylvania Gen.*, the court found that the term "occurrence" was ambiguous because it was unclear as to whether the trigger of coverage referred to the time when damage was inflicted or when the causal acts were committed. *See Pennsylvania Gen. Ins. Co.*, 185 Cal. App. 4th at 1526. Unlike the policy in *Pennsylvania Gen.*, the policy at issue herein is not ambiguous. The policy specifically states that property damage caused by work that was completed prior to the policy's inception is excluded from coverage. (ECF No. 12-5 at 32.) Accordingly, this Court does not find *Pennsylvania General* persuasive.

### IV. CONCLUSION

For the reasons stated above, the Court finds that the policy clearly excludes damages that result from work completed by Sherman Loehr prior to the inception of the policy. Plaintiff has failed to show a potential for coverage. As such, Plaintiff's Motion for Partial Summary Judgment as to its claim for declaratory judgment (ECF No. 12) is hereby DENIED.

IT IS SO ORDERED.

Dated: July 21, 2014

Troy L. Nunley
United States District Judge