1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    AMERICAN ZURICH INSURANCE              No.  2:14-cv-00060-TLN-DB
      COMPANY, et al.,
12
                      Plaintiffs,
13                                           **ORDER**
            v.
14
      IRONSHORE SPECIALTY INSURANCE
15    COMPANY,

16                    Defendant.

17

18          This matter is before the Court pursuant to Defendant Ironshore Specialty Insurance

19    Company's ("Defendant") Motion for Summary Judgment (ECF No. 20) and Plaintiffs American

20    Zurich Insurance Company ("American Zurch"), Northern Insurance Company of New York

21    ("Northern"), and Steadfast Insurance Company's ("Steadfast") (collectively referred to as

22    "Plaintiffs") Cross-Motion for Summary Judgment (ECF No. 26).  The parties have both opposed

23    each other's motions (*see* ECF Nos. 25 & 32), and filed the appropriate replies (*see* ECF Nos. 31

24    & 33).  The Court has carefully considered the arguments raised by both parties.  For the reasons

25    set forth below, Defendant's Motion for Summary Judgment (ECF No. 20) is GRANTED IN

26    PART and DENIED IN PART, and Plaintiffs' ("Plaintiff") Cross-Motion for Summary Judgment

27    (ECF No. 26) is DENIED.

28    ///

                                              1

## I.   FACTUAL BACKGROUND

The instant action is an insurance coverage matter in which Defendant disclaimed coverage in connection with twenty-one separate legal matters.  While the underlying legal matters which involved alleged construction defects were eventually settled and resolved, a coverage dispute still exists between insurers arising from Defendant's decision to disclaim coverage.  Matt's Roofing and Sherman Loehr, who were both insured by Defendant, were named as defendants in these lawsuits alleging defects in the construction of homes.  Defendant disclaimed coverage in those suits asserting that the projects were completed prior to the policy's issue date and thus excluded under the Continuous or Progressive Injury or Damage Exclusion.  At issue in this motion are the following three insurance policies issued by Defendant:

| Insured | Exhibit | Policy No. | Policy Term |
| --- | --- | --- | --- |
| Matt's Roofing | ECF No. 21-2 at 66 | 00VMU0905001 | 01/01/09-01/01/10 |
| Matt's Roofing | ECF No. 25-7 | 000085201 | 01/01/10-01/01/11 |
| Sherman Loehr | ECF No. 21-3 | 017U00905001 | 10/31/09-10/31/10 |

Plaintiffs brought the instant action against Defendant alleging sixty-three causes of action.  (Second Am. Compl. ("SAC"), ECF No. 10.)  Essentially Plaintiffs have alleged a count for decaratory relief, equitable contribution, and equitable indemnity as to each of the twenty-one legal matters settled by Plaintiffs.  Defendant has moved for summary judgment as to all sixty-three counts.  (*See* Def's P&A is Supp. of Mot. for Summ. J., ECF No. 20-1.)  Plaintiffs move for partial summary judgment as to Defendant's duty to defend in connection with Causes of Action Nos. 1, 4, 7, 10, 13, 16, 19, 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58 and 61.  Each of these Causes of Action is for Declaratory Relief as to Defendant's duty to defend in connection with each separate underlying matter.  (*See* Pls' Mot. for Summ. J., ECF No. 26.)

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing

2

1   the district court of the basis of its motion, and identifying those portions of "the pleadings,

2   depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

3   which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

4   *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

5   at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

6   solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

7   324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party

8   who does not make a showing sufficient to establish the existence of an element essential to that

9   party's case, and on which that party will bear the burden of proof at trial.

10        If the moving party meets its initial responsibility, the burden then shifts to the opposing

11  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

12  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

13  *Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual

14  dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

15  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

16  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

17  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

18  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

19  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

20  the nonmoving party.  *Id.* at 251–52.

21        In the endeavor to establish the existence of a factual dispute, the opposing party need not

22  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

23  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

24  trial."  *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to

25  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

26  trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

27  amendments).

28        In resolving the summary judgment motion, the court examines the pleadings, depositions,

3

answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

## III.   ANALYSIS

Because the insurance policies issued by Defendant to Matt's Roofing and Sherman Loehr contain the same provisions, the Court finds it prudent to first discuss the language of the policies and then address the relevant California insurance law principles that will apply to this Court's interpretation of the policies.  Because Plaintiffs have brought claims for declaratory relief, equitable contribution, and equitable indemnity as to each legal action brought against both Matt's Roofing and Sherman Loehr, the Court then turns to each case brought against these companies to determine whether there was potential coverage under Defendant's policy.

A.  Policy Language

The Insuring Agreement in each of these policies provides in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply.
>
> . . .
>
> This insurance applies to ... "property damage" only if:
>
> (1) The … "property damage" is caused by an "occurrence" …;

4

[and]

(2) The … property damage occurs during the policy period … .

(Def's Reply to Pl.'s Resp. to Def's Sep. Statement of Facts ("DRPRDSSF"), ECF No. 31-1, No. 1.)

The Ironshore Policies include the following definitions:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "Products-completed operations hazard":

a. Includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. . . .

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it ... .

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts, or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing or failing to provide warnings or instructions.

(DRPRDSSF, ECF No. 31-1, No. 2.)

The policies contain numerous exclusions including coverage for "damage to your work arising out of it or any part of it and included in the 'products completed operations hazard.'"

(DRPRDSSF, ECF No. 31-1, No. 3.)  Additionally, The Ironshore policies' declarations pages list specific "Endorsements Attached To This Policy," one of which is "Continuous or Progressive

1    Injury Exclusion" (the "CP Exclusion"), which provides in relevant part:

2           This insurance does not apply to any… "property damage":

3           1. which first existed, or is alleged to have first existed, prior to the
            inception of this policy.  "Property damage" from "your work" ...
4           performed prior to policy inception will be deemed to have first
            existed prior to the policy inception, unless such "property damage"
5           is sudden and accidental and takes place within the policy period; or

6           2. which was, or is alleged to have been, in the process of taking
            place prior to the inception date of this policy, even if such ...
7           "property damage" continued during this policy period; or

8           3. which is, or is alleged to be, of the same general nature or type as
            a condition, circumstance or construction defect which resulted in
9           ... "property damage" prior to the inception date of this policy.

10   (DRPRDSSF, ECF No. 31-1, No. 4.)

11          Keeping in mind the terms of the policy and the language set forth above, the Court turns

12   to a brief discussion of the duty to defend under California law and then turns to the individual

13   claims brought against Matts Roofing and Sherman Loehr.

14          B.   Duty to Defend

15          The duty to defend does not depend on the insurer's investigation and determination that

16   the plaintiff has a reasonable probability of success.  It must protect the insured against

17   groundless as well as probable claims; i.e., it must defend whenever the complaint shows a claim

18   for covered damages, i.e., "potential coverage."  *See Kazi v. State Farm Fire and Cas. Co.*, 24

19   Cal. 4th 871, 879 (2001); *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), *as*

20   *modified on denial of reh'g* (May 13, 1993).  "The duty to defend is not without limitation; it

21   extends only to the defense of those actions of the nature and kind covered by the policy." *Dillon*

22   *v. Hartford Acc. & Indem. Co.*, 38 Cal. App. 3d 335, 339–40 (1974) (citing *Gray v. Zurich*

23   *Insurance Co.*, 65 Cal. 2d 263, 275 (1966)).  "If the insurer, after taking into consideration facts

24   gathered from its own investigation or information supplied by the insured, determines that there

25   is no potential liability under the policy, it may refuse to defend the lawsuit; this it does at its own

26   risk, and if it later develops liability, or potential liability existed under the policy, the company

27   will be held accountable to its insured, or to one who obtained judgment against its insured in the

28   action it refused to defend." *Id.* (internal quotations omitted).  In making a determination as to

6

whether the insurer owes a duty to defend the court compares the allegations of the complaint

with the terms of the policy.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081.

Keeping this in mind, the Court turns to the individual cases brought against both Matt's

Roofing and Sherman Loehr.

C.  Matt's Roofing

Defendant issued an insurance policy with the aforementioned language to Matt's Roofing

from June 1, 2009 through June 1, 2011.  (DRPRDSSF, ECF No. 31-1, No. 21.)  Plaintiffs'

Causes of Action One through Nine and Twenty-eight through Forty-eight pertain to ten legal

actions against Matt's Roofing.  Among these, eight of the cases[1] alleged the following identical

facts:

> **At the time of the purchase by Plaintiffs**, the PROPERTY was
> defective and unfit for its intended purposes because Defendants
> did not construct the PROPERTY in a workmanlike manner as
> manifested by, but not limited to, numerous defects which have
> resulted in damage to the homes and their component parts.  The
> defects include, without limitation and to various degrees on the
> plaintiffs' respective residences, the following:
>
> Faulty soil compaction, faulty existing underlying soils and
> expansive soils resulting in soil movement and damage to the
> structures, concrete slabs, flatwork and foundation defects;
> plumbing defects; electrical defects; drainage defects; roof defects;
> HVAC defects; waterproofing defects; window and door defects;
> landscaping and irrigation defects; framing, siding and structural
> defects; ceramic tile, vinyl flooring and countertop defects; drywall
> defects; fence and retaining wall defects; cabinet and wood trim
> defects; fireplace and chimney defects; tub and shower door
> defects; painting defects; sheet metal defects; and stucco defects.

(Def's Reply to Plaintiffs' Add'l Facts ("DRPAF"), ECF No. 31-1, Nos. 4, 10, 16, 22, 34, 52, 58

(emphasis added).)  All of the aforementioned cases against Matt's Roofing allege that the

damage or condition existed **at the time that the plaintiffs purchased the residences**.  Of these

---

[1]   *Appel v. Atherton Homes, LLC*, San Joaquin County Case No. 39-2009-00185411-CU-CD-STK ("Appel");
*Baluyot v. Morrison Homes, Inc.*, San Joaquin County Superior Court, Case No. CV035047 ("Baluyot"); *Bolton v. K.
Hovnanian Forecast Homes, Inc.*, San Joaquin County Superior Court, Case No. 39-2011- 00259783-CU-CD-STK
("Bolton"); *Branch v. Woodside Weston Ranch, Inc.*, San Joaquin County, Case No. CV034440 ("Branch"); *Ali v.
Arnaiz Development Inc.*, San Joaquin County Superior Court, Case No. 39-2008-00199202 ("Ali"); *Anderson v. Frontier
Land Companies*, San Joaquin County Superior Court, Case No. 39-2009-00212356 ("Anderson"); *Palacios v. Ticino
Building Partners*, San Joaquin County Superior Court, Case No. 39-2010-00239095-CU-BC-STK ("Palacios"); *Reis
v. Manteca Vintage Estates*, San Joaquin Superior County, Case No. 39-2011-00262450-CU-CD-STK ("Reis").

1    eight cases, Appel, Baluyot, Branch, and Ali were filed prior to the 2009 date that Defendant

2    insured Matt's Roofing.[2]  Thus, the plaintiffs in these matters were aware of the alleged defect

3    and damage that allegedly existed prior to Defendant's issuance of the policy.  Under the plain

4    language of the policy, these claims would not be covered: "This insurance does not apply to

5    any… 'property damage': 1. which first existed, or is alleged to have first existed, prior to the

6    inception of this policy" ("CP Exclusion Section 1").  (DRPRDSSF, ECF No. 31-1, No. 4.)  It is

7    plainly clear that these causes of action would not be covered under the policies issued by

8    Defendant.  As such, the Court finds that there was not a duty to defend as to these causes of

9    action because Defendant's duty to defend only extends to the defense "of those actions of the

10   nature and kind covered by the policy."  *Dillon*, 38 Cal. App. 3d at 339–40.  Because Defendant

11   did not have a duty to defend or liability as to these causes of action, the Court finds that

12   Plaintiffs cannot succeed on their claims for declaratory relief, equitable contribution, and

13   equitable indemnity on the Appel, Baluyot, Branch, and Ali cases and thus grants Defendant's

14   motion for summary judgment as to Plaintiffs' First through Tenth Causes of Action as well as

15   Plaintiffs' Twenty-eighth through Thirtieth Causes of Action.

16          The remaining four cases which utilized the aforementioned pleading were filed after the

17   inception of the insurance policy.  Thus, the Court now turns to the remaining four cases:

18   Anderson, Bolton, Palacios, and Reis to determine whether Defendant had a duty to defend

19   against any of these actions.

20                  i.      *Anderson*

21          Anderson was filed on May 15, 2009, in San Joaquin County Superior Court.  (*See*

22   Compl., Ex. 73, ECF No. 21-17.)  The Complaint alleged causes of action for: strict product

23   liability; strict product liability for components; violations of California Civil Code § 896; breach

24   of implied warranties of merchantability; breach of contract; negligence; and breach of express

25   warranties.  (Ex. 73, ECF No. 21-17.)  Of the 41 homeowners[3] in said action, twenty-eight were

26   _____
     [2]     All of these cases alleged the following causes of action: strict product liability; strict product liability for
27   components; breach of implied warranties of merchantability; breach of contract; negligence; and breach of express
     warranties.  (*See* Ali Compl., Ex. 64, ECF No. 21-16; Appel Compl., Ex. 7, ECF No. 21-5; Baluyot Compl., Ex. 12,
     ECF No. 21-6; Branch Compl., Ex. 15, ECF No. 21-6.)
28   [3]     Throughout this Order, the Court refers to homeowner plaintiffs as they pertain to the separate cases against

the original owners of the properties which were purchased from early 2000 until early 2005.[4]

(*See* Anderson Homeowners Matrix, Ex. 77, ECF No. 21-17 at 74.)  The homeowners all alleged that the defect existed at the time of purchase.  In addition, the homeowners alleged that defendants "did not construct the property in a workmanlike manner as manifested by, but not limited to, numerous defects which have resulted in damage to the homes and their component parts." (ECF No. 21-17 at 22–23, ¶15.)  In doing so, homeowners specifically contended that the roof was not properly constructed.  (ECF No. 21-17 at 22–23, ¶15.)  Furthermore, homeowners specified in their Third Cause of Action that the defects/damage to their property was caused by violations of building standards set forth in California Civil Code § 896 resulting in "roofs, roofing systems, chimney caps, and ventilation components . . .  that allow water to enter the structure or to pass beyond, around, of through the designed or actual moisture barriers, including without limitation, internal barriers located within the systems themselves." (ECF No. 21-17 at 29, ¶ 44.)

These allegations support the notion that the defect existed at the time the home was completed and continued to cause damage from the date of completion up to the time that homeowners repaired the properties.  As such, these claims are excludable under two legal theories. First, if the Court looks only to the allegation that the defect existed at the time that the plaintiffs purchased their home, many of the plaintiffs purchase their homes prior to January 1, 2009 and thus are exempted because the alleged damage existed prior to the policy.  However, a more holistic reading of the allegations supports the argument that even if a plaintiff was a subsequent purchaser who did not purchase the home until after the policy inception date, the claim would still be excluded under CP Exclusions 1 or 2, since the claims in the Anderson litigation are dependent on a defective/negligent construction theory.

a.  Date of Purchase

As referenced above, of the 41 homeowners in this action, twenty-eight were the original

---

Matt's Roofing and Sherman Loehr.  In doing so, the Court's reference to the number of homeowners corresponds with the amount of properties in the action.  For example, if the action concerned forty properties and some of those properties were owned by a husband a wife, for purposes of this Order they are considered one joint homeowner.
[4]        The complaint does not differentiate as to subsequent purchasers as to whether the defect existed at the time of the original purchase of the home, i.e. the date of completion, or that of the subsequent purchase.

1   owners of the properties which were purchased from early 2000 until early 2005.  (*See* Anderson

2   Homeowners Matrix, ECF No. 21-17 at 74.)  As for the thirteen homeowners[5] that were not the

3   original purchasers, ten of the homeowners purchased the homes prior to the policy's January 1,

4   2009 inception date.  Therefore these thirty-eight claims would not have been covered by the

5   policy since the pleadings state that the defect and damage existed at time of purchase.  (*See* CP

6   Exclusions 1 and 2.)  This leaves three homeowners[6] who purchased their homes in 2009, after

7   the policy inception date.  Under Plaintiffs' theory of possible sudden or accidental damage, these

8   are the only three homeowners that Plaintiffs' theory could apply to.  The problem with this

9   theory is that there is no factual allegation within the Complaint that would allow the reader to

10  infer a sudden or accidental cause of the alleged damage.  To the contrary, the allegations taken as

11  a whole reinforce the notion that the defect and damage complained of existed at the time that the

12  homes were completed.  (*See* ECF No. 21-17 at 22–29.)

13          b.   Date of Completion

14          Under the insurance policy, specifically CP Exclusion 1, "'Property damage' from 'your

15  work' . . . performed prior to policy inception will be deemed to have first existed prior to the

16  policy inception, unless such 'property damage' is sudden and accidental."  Thus, pursuant to the

17  insurance policy, even if damages were not present prior to the policy inception, they may still be

18  excluded where the "property damage . . . was, or is alleged to have been, in the process of taking

19  place prior to the inception date of this policy, even if such ... 'property damage' continued during

20

21          [5]       Pursuant to a Minute Order issued by this Court, Defendant provided the Court with Deeds of Trust as to the
        properties involved in litigation against both Matt's Roofing and Sherman Loehr which have been filed with the

22      County Recorders.  Defendant requests that this Court take judicial notice of these documents under Federal Rule of
        Civil Procedure 201.  (*See* ECF No. 42.)  Under Rule 201, facts appropriate for judicial notice are those "not subject

23      to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2)
        capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

24      Fed. R. Evid. 201(b).  The documents attached hereto are "not subject to reasonable dispute" and are "capable of
        accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

25      Evid. 201.  In fact, Deeds of Trust and similarly recorded public documents are widely held as proper subjects of
        judicial notice.  *See, e.g.*, *In the Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of deeds
        and assignments).  As such, the Court GRANTS Defendant's request for judicial notice (ECF No. 42) of the

26      aforementioned documents.
                [6]       Homeowners Anthony and Regina Vincent purchased their home on January 8, 2009.  (*See* Vincent Deed of

27      Trust, ECF No. 41-5 at 30.)  Homeowners David and Kimberly Ott purchased their home on February 11, 2009.  (*See*
        Ott Deed of Trust, ECF No. 41-5 at 32.)  Homeowner Rosie Robinson purchased her home on October 22, 2009.

28      (*See* Robinson Deed of Trust, ECF No. 41-5 at 28.)

1   this policy period" ("CP Exclusion 2").

2          The evidence before the Court shows that Matt's Roofing completed all work on the

3   homes in the Anderson litigation in or before Spring 2005.  (ECF No. 21-17 at 74.)  Thus, the

4   defect causing the damage existed at the time that the work was completed, which at the latest

5   was in 2005.  Because the nature of the claims against Matt's Roofing consist of faulty

6   construction that would cause immediate and gradual damage due to water exposure, these claims

7   fall squarely within CP Exclusions 1 and/or 2, as they existed prior to the policies January 2009

8   inception.  Therefore, these claims are clearly excluded from the policy as the homeowners

9   alleged that the defects existed at the time of purchase.

10          As referenced above, Plaintiffs have repeatedly alleged that the damages in Anderson

11  could have been sudden or accidental and thus covered under Defendant's policy.  (ECF No. 26 at

12  11.)  In fact, Plaintiffs make this same argument as to all the cases against Matt's Roofing and

13  Sherman Loehr at issue in the instant litigation.  However, Plaintiffs fail to produce any evidence

14  of allegations that would support a claim of sudden or accidental damage in this case or the

15  foregoing.  Instead, Plaintiffs rely on their assertion that the homeowners' claims against Matt's

16  Roofing were "silent pleadings."  (*See* ECF No. 26 at 12.)   This Court finds no merit in

17  Plaintiffs' claims.  It is clear that the homeowners plead with specificity that the damage

18  complained of was slowly caused by alleged construction defects.  Here, Defendant compared the

19  allegations of the complaint with the terms of the policy and determined that it did not owe a duty

20  to defend as is required under the law.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081.  Therefore,

21  the Court hereby grants Defendant's motion for summary judgment as to Plaintiffs' Thirty-first

22  through Thirty-third Causes of Action because Plaintiffs cannot succeed on their claims for

23  declaratory relief, equitable contribution, and equitable indemnity.

24                 *ii.      Bolton*

25          The Bolton litigation was filed on May 10, 2011.  (Compl., ECF No. 21-20 at 75.)  The

26  Complaint alleged causes of action for: strict product liability; strict product liability for

27  components; violations of California Civil Code § 896; breach of implied warranties of

28  merchantability; breach of contract; negligence; and breach of express warranties.  (ECF No. 21-

20 at 75.) As referenced above, Bolton also alleged that the defect caused by Matt's Roofing's work existed at the time of purchase. (ECF No. 21-20 at 79, ¶14.) Of the thirty homeowner plaintiffs in said litigation, only eight are original purchasers, all of whom purchased their homes in or before the end of 2003. Thus—pursuant to assertion that the defects existed at the time of purchase—those claims would be excluded as a prior defect/damage under the policy. The Court is not in receipt of the closing dates of the twenty-two subsequent purchasers, but notes that all of the homes were completed between May 2001 and April 2004. (*See* Boldon Homeowners Matrix, ECF No. 21-21 at 38.) Thus, Matt's Roofing performed work on these properties during that same time frame, roughly four and a half years prior to Defendant issuing its insurance policy.

A review of the pleadings in this matter shows that, like the Anderson litigation, the homeowners alleged violation of the Cal. Building Code (Cal. Civil Code § 896). (ECF No. 21-20 at 29, ¶ 43.) Specifically, homeowners alleged that the roof was installed in such a way that allowed "water to enter the structure or to pass beyond, around, or through the designed or actual moisture barriers." (ECF No. 21-20 at 29, ¶ 43.) Therefore, as discussed above as it pertained to the Anderson litigation, the defects would be excluded from the policy under CP Exclusions 1 and/or 2. Furthermore, there are no allegations or information that would lead to the conclusion that sudden or accidental damage occurred and caused the water damage to the homes. As such, the Court concludes that Defendant reasonably compared the allegations of the complaint with the terms of the policy and determined that it did not owe a duty to defend as is required under the law. *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081. Hence, the Court hereby grants Defendant's motion for summary judgment as to Plaintiffs' Thirty-seventh through Thirty-ninth Causes of Action because Plaintiffs cannot succeed on their claims for declaratory relief, equitable contribution, and equitable indemnity.

### iii.    *Palacios*

The Palacios litigation was filed on April 12, 2010, in San Joaquin County Superior Court, California. (Compl., Ex. 108, ECF No. 21-22 at 63.) The Complaint alleged strict products liability and negligence. (ECF No. 21-22 at 63.) Palacios also alleged that defects

1   caused by Matt's Roofing's work existed at the time of purchase.  (ECF No. 21-22 at 66, ¶ 13.)

2   Of the five homeowner plaintiffs[7] in said litigation, none are original purchasers, but all

3   purchased the homes between December 2002 and December 2008.  Thus, as the complaint

4   alleges that the defects and damage existed at the time of purchase, the defects in those homes

5   would be excluded as a prior defect/damage under the policy, under CP Exclsuion 1.  Moreover,

6   the complaint alleges a negligence cause of action that clarifies that the damages complained of

7   stem from the careless and negligent construction of the properties.  (ECF No. 21-22 at 66, ¶¶ 19–

8   22.)  Since these homes were completed in 2000 and 2001 (*see* ECF No. 20-22 at 90), these

9   defects and the resultant damage existed prior to the 2009 insurance policy and are excluded

10  under CP Exclusions 1 and 2.  As such, the Court hereby grants Defendant's motion for summary

11  judgment as to Plaintiffs' Forty-third through Forty-fifth Causes of Action because Plaintiffs

12  cannot succeed on their claims for declaratory relief, equitable contribution, and equitable

13  indemnity.

14          iv.     *Reis*

15          The Reis litigation was filed on June 24, 2011, in San Joaquin County Superior Court,

16  California.  (Compl., Ex. 116, ECF No. 21-23 at 2.)  The Complaint alleged causes of action for:

17  strict product liability; strict product liability for components; violations of California Civil Code

18  § 896; breach of implied warranties of merchantability; breach of contract; negligence; and

19  breach of express warranties.  (ECF No. 21-23 at 2.)  As referenced above, Reis also alleged that

20  the defect caused by Matt's Roofing's work existed at the time of purchase.  (ECF No. 21-23 at 6,

21  ¶ 14.)  The litigation included 23 homeowners, fifteen of which were the original purchasers and

22  closed on the homes between June 2002 and July 2005.  (Reis Homeowners Matrix, Ex. 120, ECF

23  No. 21–23 at 55.)  The remaining eight homeowners purchased the properties between July 2005

24  and September 2010.  (*See* Deeds of Trusts, Ex. 165, ECF No. 41-4.)  Many of the homeowner

25  claims in the Reis litigation are likely excluded because the defect and damage existed prior to the

26  January 1, 2009, policy inception date.  However, even those plaintiffs' claims who purchased the

27  

28  _____

[7]      The Palacios litigation originally involved seven properties.  The homeowners of two of the properties were dismissed from the action.  (*See* Palacios Homeowners Matrix, Ex. 111, ECF No. 20–22 at 90.)

1   homes after the policy inception are likely excluded under CP Exclusion 2.

2         Like the other cases, the Reis plaintiffs allege that the defects and subsequent damage to

3   their properties stems from violations of California's Building Code (Cal. Civil Code § 896).

4   (ECF No. 21-23 at 29, ¶¶ 36–49.)  Specifically, homeowners alleged that the "roof, roofing

5   systems, chimney caps, and ventilation components at the propertie[s] allow water to enter the

6   structure or to pass beyond, around, or through the designed or actual moisture barriers."  (ECF

7   No. 21-23 at 12, ¶ 45(a)(4).)  Therefore, as discussed as above, the defects would be excluded

8   from the policy under CP Exclusion 2 since the defect existed at the time construction was

9   completed.  Furthermore, there are no allegations or information that would lead to the conclusion

10  that sudden or accidental damage occurred and caused the water damage to the homes.  As such,

11  the Court concludes that Defendant reasonably compared the allegations of the complaint with the

12  terms of the policy and determined that it did not owe a duty to defend as is required under the

13  law.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081.  Therefore, the Court hereby grants

14  Defendant's motion for summary judgment as to Plaintiffs' Forty-sixth through Forty-eighth

15  Causes of Action because Plaintiffs cannot succeed on their claims for declaratory relief,

16  equitable contribution, and equitable indemnity.

17              *v.*      **Bautista**

18        The Bautista litigation was filed on September 17, 2010, in San Joaquin County Superior

19  Court, California.  (First Am. Compl. ("FAC"), Ex. 84, ECF No. 21-19, at 19.)  The FAC asserts

20  the following causes of action: violations of standards for residential construction; strict liability;

21  breach of implied warranty of merchantability; breach of contract; negligence; and breach of

22  express warranty.  (ECF No. 21-19 at 19.)  Specifically, the FAC alleges:

23              At the time PLAINTIFFS took possession of the PROPERTY, and
                thereafter, the PROPERTY was defective in design and
24              construction in that, among other things the building envelope was
                designed and constructed so as to permit intrusion of water and/or
25              moisture into its interior including, without limitation, water and
                moisture intrusion; the Structure was under designed and built to
26              the wrong wind exposure causing movement or the structure and
                damage thereto; the building was improperly constructed, including
27              improper construction of the framing system and related
                components; excessive cracking of exterior wall finishes so as to
28              permit moisture intrusion; improper installation of the fenestration

1
2

> system; improper construction of the roofing system and deviations from building plan specifications; improper design and construction of the exterior drainage system.

3  (ECF No. 21-19, at 23, ¶ 16.)  All of the claims arise out of a faulty construction theory.  The

4  homes in this litigation were all completed between October 2000 and October 2004.  (Bautista

5  Homeowners Matrix, Ex. 89, ECF No. 21-20 at 33.)  Thus, any work by Matt's Roofing was

6  completed at least four years prior to the 2009 insurance policy issued by Defendant.  Like the

7  aforementioned litigation against Matt's Roofing, the Bautista properties are excluded from the

8  insurance policy under CP Exclusion 2 since the defects existed prior to the insurance policy.

9  Moreover, there are no allegations that would usher these claims within the sudden and accidental

10  realm of coverage, as Plaintiffs unsuccessfully urge.  Therefore, Defendant's motion for summary

11  judgement as to Plaintiffs' Thirty-fourth through Thirty-sixth Causes of Action is granted because

12  Plaintiffs cannot succeed on their claims for declaratory relief, equitable contribution, and

13  equitable indemnity.

14                  *vi.*     *Pacheo*

15         The Pacheo litigation was filed on November 7, 2011, in San Joaquin County Superior

16  Court, California.  (Compl., Ex. 103, ECF No. 21-22 at 15.)  The Complaint alleges strict

17  liability, strict products liability, breach of implied warranty of merchantability, breach of implied

18  warranty of fitness, negligence, and negligence per se.  (ECF No. 21-22 at 15.)  The complaint

19  alleges that "the construction defects complained of concern standard components of the

20  development including leaking roofs, leaking windows, showers/tubs, stucco cracks, drywall

21  cracks, inadequate draining, . . . "  (ECF No. 21-22 at 17, ¶ 5(F).)  The Pacheo litigants alleged

22  that the construction defects "continu[ed] to deteriorate and to degrade, and the damages will

23  continue in the future."  (ECF No. 21-22 at 21, ¶ 19.)  Thus, this litigation arises out of

24  allegations that the homes were defectively constructed and those defective conditions existed at

25  the original close of escrow.

26         The complaint states that the homes were built from 2001–2003.  (ECF No. 21-22 at 17, ¶

27  6.)  Thus, any work by Matt's Roofing was completed at least five to six years prior to the 2009

28  insurance policy issued by Defendant and is excluded from the insurance policy under CP

1    Exclusions 1 and/or 2.  Again, this Court finds no evidence to support an inference that the

2    damages complained of could have been "sudden" or "accidental" and thus covered by

3    Defendant's insurance policy.  As such, Defendant's motion for summary judgement as to

4    Plaintiffs' Fortieth through Forty-second Causes of Action is granted since Plaintiffs have not

5    shown that they are capable of success on their claims for declaratory relief, equitable

6    contribution, and equitable indemnity.

7        D.  Sherman Loehr

8        Sherman Loehr is a custom tile company that performed work in numerous newly

9    constructed residences.  Defendant issued Sherman Loehr an insurance policy with the

10   aforementioned language from October 31, 2009 through October 31, 2010.  (DRPRDSSF, ECF

11   No. 31-1, No. 4; *see also* Insurance Policy, Ex.4, ECF No. 21-3.)  Plaintiffs' Causes of Action

12   Ten through Twenty-seven and Forty-nine through Sixty-three pertain to ten legal actions against

13   Sherman Loehr.  (SAC, ECF No. 9.)  Defendant asserts that the CP Exclusion bars coverage for

14   all claims against Sherman Loehr because Sherman Loehr completed its work years before the

15   2009 inception date of the Ironshore policy.  (ECF No. 20-1 at 15.)  For the reasons set forth

16   below, this Court agrees.

17       Defendants did not defend the following cases due to their determination that the alleged

18   defects were excluded under the policy: *Yakel v. Elliott Homes, Inc.*, Sacramento County Superior

19   Court, Case No. 34-2008 01025452 ("Yakel"); *Zavala v. Lennar Renaissance, Inc.*, Sacramento

20   County Superior Court, Case No. 34-2009-00061399 ("Zavala"); *Perry v. Elliott Homes, Inc.*,

21   Sacramento County Superior Court, Case No. 34-2009-00046856 ("Perry"); *Dobbins v. U.S.*

22   *Home Corp.*, Sacramento County Superior Court, Case No. 34-2010-00070141 ("Dobbins");

23   *Peterson v. Del Webb California Corp.*, Placer County Superior Court, Case No. SCV 27125

24   ("Peterson"); *Aoki v. Lennar Renaissance, Inc.*, Sacramento County Superior Court, Case No. 34-

25   2010-00074166 ("Aoki") *Babel v. Del Webb California Corp.*, Placer County Superior Court,

26   Case No. SCV-0031692 ("Babel"); *Barry v. Dunmore Homes, LLC*, San Joaquin County Superior

27   Court, Case No. 39-2010-00252992-CU-CDSTK ("Barry"); *Bell v. Meadowview Village Limited*

28   *Partnership*, Sacramento County Superior Court, Case No. 34-2011-00105467 ("Bell"); *Chess v.*

1  *Myers Homes, Yolo County Superior Court*, Case No. CV10-2703 ("Chess"); and *Morataya v.*

2  *Lennar Homes*, Sacramento County Superior Court, Case No. 34-2011-00095176 ("Morataya").

3       In Defendant's brief and Plaintiffs' opposition, the parties present the same arguments as

4  to each legal matter discussed below.  Basically, Defendant asserts that CP Exclusion bars

5  coverage of the claims because Sherman Loehr completed its work years before the 2009

6  inception date.  (ECF No. 20-1 at 15.)  Plaintiffs oppose arguing that because the complaint is

7  silent as to sudden and/or accidental damage that Defendant had a duty to defend.  (ECF No. 26 at

8  11.)  Thus, at the outset the Court notes these arguments and limits the discussion of each case

9  below to the facts supporting the Court's position instead of repeating these arguments

10  continually throughout this Order.

11            *i.     Yakel*

12       The Yakel litigation was first filed in 2008.  (Compl., Ex. 24, ECF No. 21-7 at 18.)

13  Sherman Loehr was named as a cross-defendant on July 29, 2009, prior to the inception of the

14  Ironshore policy, on October 31, 2009.  (Cross-complaint, Ex. 25, ECF No. 21-7 at 32.)

15  Therefore, the property damage existed and was known of prior to the policy's inception and is

16  excluded because the property damage did not occur during the policy period.  (*See* DRPRDSSF,

17  ECF No. 31-1, No. 1 (limiting coverage of property damage to damage that occurs during the

18  policy period).)  Accordingly, the Court hereby grants Defendant's motion for summary judgment

19  as to Plaintiffs' Tenth through Twelfth Causes of Action because Plaintiffs cannot succeed on

20  their claims for declaratory relief, equitable contribution, and equitable indemnity.

21            *ii.    Zavala*

22       The Zavala litigation was filed in October 23, 2009 in Sacramento County Superior Court,

23  California.  (*See* First Am. Compl., Ex 27, ECF No. 21-7; Cross-compl., Ex. 28, ECF No. 21-8.)

24  Zavala brought claims for strict liability, breach of express warranties, breach of implied

25  warranties of merchantability, breach of implied warranties of fitness, and negligence.  Zavala

26  alleged that eight homes, all built in 2000 and 2001, were discovered to be defective in the three

27  years prior to bringing the suit.  (ECF No. 21-7 at 61, ¶ 25.)  Specifically, the complaint lists

28  defective conditions in:

17

the concrete slabs, stucco, water intrusion membranes, roofs, floors, walls, ceilings, doors, windows, sliding glass doors, decks, shear walls. concrete flatwork, sheet metal, insulation, electrical systems, heating, ventilation and air conditioning systems. pavement system, plumbing and plumbing fixtures, irrigation systems, and structural systems, were and are not of merchantable quality, nor were they designed, erected, constructed or installed in a workmanlike manner but instead, are defective and, as now known, the subject structures demonstrate improper, non-existent, and/or inadequately designed and/or constructed, concrete slabs, stucco, water intrusion membranes, roofs, floors, walls, ceilings, doors and windows, sliding glass doors, shear walls, concrete flatwork, sheet metal, insulation, electrical systems, heating, ventilation and air conditioning systems, pavement system, plumbing and plumbing fixtures, irrigation systems, and structural systems, so the subject structures as constructed are defective and improper and have resulted in damaged and defective structures and defective real property.

(ECF No. 21-7 at 61, ¶ 25.)  Thus, the damage complained of was caused by defective work done prior to the inception of Defendant's policy and furthermore was known of prior to the policy issuance.  Plaintiff has not offered any evidence from which this Court could find a possibility of the damage being caused by a sudden or accidental occurrence, whereas Defendant has provided sufficient evidence that the allegedly defective work was completed prior to the policy and thus excluded under the policy.  Such evidence supports Defendant's reasonable belief that it did not have a duty to defend claims that were not within the policy's coverage.  As such, the Court hereby grants Defendant's motion for summary judgment as to Plaintiffs' Thirteenth through Fifteenth Causes of Action for declaratory relief, equitable contribution, and equitable indemnity.

### iii.    Perry

The First Amended Complaint ("FAC") in the Perry action was filed on August 11, 2009 in Sacramento County Superior Court, California.  (FAC, Ex. 33, ECF No. 21-8 at 50.)  The FAC asserted seven causes of action for strict liability, strict liability of components, violations of California Building Standards set forth in California Civil Code § 896, breach of implied warranties of merchantability, breach of contract, negligence, and breach of express warranty. (ECF No. 21-8 at 50.)  This case, like the others discussed above, asserted defective construction and workmanship which allegedly led to damage of the properties.  The Perry litigation involved 78 homes all constructed during or before 2007.  The FAC asserts that the properties were not

1    constructed in a workmanlike manner which resulted in defects, including but not limited to tile,

2    vinyl flooring and countertop defects.  (ECF No. 21-8 at 57 at ¶ 14.)  As discussed at length

3    above, the work was done prior to the effective date of Defendant's insurance policy.  Plaintiffs

4    have provided no facts that would support an allegation that damage in this litigation was the

5    result of a sudden occurrence or accident.  Thus, the Court finds that Defendant reasonably

6    determined that it did not owe a duty to defend as is required under the law, *see Horace Mann*

7    *Ins. Co.*, 4 Cal. 4th at 1081, and hereby grants Defendant's motion for summary judgment as to

8    Plaintiffs' Sixteenth through Eighteenth Causes of Action.

9                    *iv.      Dobbins*

10        The First Amended Complaint ("FAC") in Dobbins was filed on April 7, 2010, in

11   Sacramento County Superior Court, California.  (FAC, Ex. 40, ECF No. 21-9 at 46.)  The FAC

12   asserted five causes of action, including strict liability, breach of implied warranty of

13   merchantability, breach of contract, negligence, and breach of express warranty.  (ECF No. 21-9

14   at 46.)  The FAC alleged that seventeen properties were defectively designed and constructed.

15   (ECF No. 21-9 at 48–49, ¶¶ 7–9.)  All of the homes in this litigation were completed prior to the

16   end of 2001, almost nine years prior to the insurance policy at issue.  (Dobbins Homeowners

17   Matrix, Ex. 43, ECF No. 21-9 at 91.)  Because the legal claims in this matter are all based on

18   faulty construction, the defects and/or damages alleged existed prior to the effective date of

19   Defendant's insurance policy.  The complaint does not allege any facts that would lend to a belief

20   that the damages complained of were the result of a sudden or accidental occurrence.  Moreover,

21   Plaintiffs have not provided any evidence that would support an allegation that damage in this

22   litigation was the result of a sudden occurrence or accident.  Thus, the Court finds that Defendant

23   reasonably determined that it did not owe a duty to defend as is required under the law, *see*

24   *Horace Mann Ins. Co.*, 4 Cal. 4th at 1081, and hereby grants Defendant's motion for summary

25   judgment as to Plaintiffs' Nineteenth through Twenty-first Causes of Action.

26                    *v.      Peterson*

27        The First Amended Complaint ("FAC") in the Peterson litigation was filed on August 16,

28   2010, in Placer County Superior Court, California.  (FAC, Ex. 40, ECF No. 21-10 at 2.)  The

                                           19

1   FAC asserted five causes of action for strict liability, breach of express warranty, breach of

2   implied warranty of merchantability, breach of implied warranty of fitness, and negligence. (ECF

3   No. 21-10 at 2.)   The FAC alleged that thirty-three properties were defectively designed and

4   constructed and that these homes "were defective when they left the Developer Defendants'

5   possession and control." (ECF No. 21-10 at 10, ¶ 20.)  The FAC alleges that the defective

6   conditions included:

7   
8   
9   
10  
11  
        concrete slabs, stucco, water intrusion membranes, roofs,
        floors/floor coverings, walls, ceilings, drywall, cabinets, doors and
        windows, sliding glass doors, shear walls, concrete flat work, sheet
        metal, insulation, electrical systems, heating, ventilation and air
        conditioning systems, pavement system, plumbing and plumbing
        fixtures, irrigation systems, soils, grading, framing, stairs,
        foundations, garage doors, shower door, mirrors, drainage, paint,
        fences, fireplaces/chimneys, decks, and structural systems, among
        other areas.

12  (ECF No. 21-10 at 10, ¶ 20.)  All of the properties were completed between September of 2000

13  and had closed escrow prior to March of 2003.  (Peterson Homeowners Matrix, Ex. 50, ECF No.

14  21-10 at 64.)  Thus, the defect/damage existed over six years prior to the inception of the

15  insurance policy at issue.  (ECF No. 21-10 at 64.)   These claims fall squarely within CP

16  Exclusion 1 and/or 2 because the alleged defects existed prior to the policy.  Once again, there are

17  no facts or allegations provided that would support that damage in this litigation was the result of

18  a sudden occurrence or accident.  Thus, the Court finds that Defendant reasonably determined

19  that it did not owe a duty to defend as is required under the law, *see Horace Mann Ins. Co.*, 4 Cal.

20  4th at 1081, and hereby grants Defendant's motion for summary judgment as to Plaintiffs'

21  Twenty-second through Twenty-forth Causes of Action.

22                          *vi.     Aoki*

23          The Aoki Complaint for Damages was filed on March 30, 2010, in Sacramento County

24  Superior Court, California.  (Compl., Ex. 56, ECF No. 21-14 at 15.)  The Aoki Complaint

25  asserted six causes of action, including: strict products liability, strict components product

26  liability, breach of implied warranty of merchantability, breach of contract, negligence, and

27  breach of express warranty.  (ECF No. 21-14 at 15.)  The Aoki litigation involved over one-

28  hundred residences.  (Aoki Homeowners Matrix, Ex. 59, ECF No. 21-14 at 74–87.)  The

1    Complaint alleged that the properties were defective and unfit for their intended purposes at the

2    time construction was completed.  (ECF No. 21-14 at 16, 19, ¶¶ 2, 14.)

3              Defendants did not construct the PROPERTY in a workmanlike
                manner as manifested by, but not limited to, numerous defects
4              which have resulted in damage to the homes and their component
                parts.    The defects include, without limitation and to various
5              degrees on the plaintiffs' respective residences, the following:

6              Faulty soil compaction, faulty existing underlying soils and
                expansive soils resulting in soil movement and damage to the
7              structures,  concrete  slabs,  flatwork  and  foundation  defects;
                plumbing defects; electrical defects; drainage defects; roof defects;
8              HVAC defects; waterproofing defects; window and door defects;
                landscaping and irrigation defects; framing, siding and structural
9              defects; ceramic tile, vinyl flooring and countertop defects; drywall
                defects; fence and retaining wall defects; cabinet and wood trim
10             defects;  fireplace  and  chimney  defects;  tub  and  shower  door
                defects; painting defects; sheet metal defects; and stucco defects.
11

12   (ECF No. 21-14 at 19, ¶ 14.)   Construction on the homes in this matter was completed on or

13   before October 21, 2005.  (ECF No. 21-14 at 74–87.)  Thus, the homes were completed and

14   allegedly defective four years prior to the inception of the October 2009 insurance policy.  The

15   Complaint does not allege any facts that would support that damage in this litigation was the

16   result of a sudden occurrence or accident.  Therefore, these claims fall squarely within CP

17   Exclusion 1 and/or 2 because the defects existed prior to the policy.  Based on the evidence

18   provided, the Court finds that Defendant reasonably determined that it did not owe a duty to

19   defend as is required under the law, *see Horace Mann Ins. Co.*, 4 Cal. 4th at 1081, and hereby

20   grants Defendant's motion for summary judgment as to Plaintiffs' Twenty-fifth through Twenty-

21   seventh Causes of Action.

22                    *vii.    Babel*

23             The Babel action was filed on September 7, 2012, in Placer County Superior Court,

24   California.  (Compl., Ex. 124, ECF No. 21-23 at 86.)  The Complaint asserted three causes of

25   action: violations of building standards as set forth in California Civil Code § 896; breach of

26   contract; and breach of express warranty.  (ECF No. 21-23 at 86.)  Babel involved eleven

27   residences, two of which subsequently withdrew from the litigation.  (Babel Homeowners Matrix,

28   Ex. 176, ECF No. 41-14 at 2.)  The Complaint alleged that the properties were defective and unfit

21

1    for their intended purposes at the time of purchase by plaintiffs.  (ECF No. 21-23 at 90–91, ¶ 13.)

2    Babel plaintiffs further alleged that the defective condition was the result of:

3            Defendants did not construct the SUBJECT PROPERTY and/or
             SUBJECT PROPERTIES in a workmanlike manner as manifested
4            by, but not limited to, numerous defects which have resulted in
             damage to the homes and their component parts. The defects
5            include, without limitation and to various degrees of plaintiffs'
             perspective residences, the following violations of California Civil
6            Code Section 869 at seq:

7            . . .

8            (16) Ceramic tile and tile countertops at the SUBJECT PROJECT
             AND/OR SUBJECT PROPERTIES allow water into the interior
9            walls, flooring systems, or other components.

10   (ECF No. 21-23 at 90–93, ¶ 13.)   All of the homes within the Babel litigation were completed on

11   or before July 8, 2005.  (ECF No. 41-14 at 2.)  The Complaint does not allege any facts that

12   would support that damage in this litigation was the result of a sudden occurrence or accident.

13   All of the claims are based on the theory of defective construction.  Because the construction of

14   these homes was completed at least four years prior to the 2009 insurance policy, these claims fall

15   squarely within CP Exclusion 1 and/or 2.  Based on the evidence provided, the Court finds that

16   Defendant reasonably determined that the Babel claims were not covered by the policy and thus

17   Defendant did not owe a duty to defend.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081.  As such,

18   the Court finds that Plaintiffs cannot succeed on their claims for declaratory relief, equitable

19   contribution, and equitable indemnity and hereby grants Defendant's motion for summary

20   judgment as to Plaintiffs' Forty-ninth through Fifty-first Causes of Action.

21                    *viii.    Berry*

22        The First Amended Complaint ("FAC") in the Berry litigation was filed on January 5,

23   2011, in San Joaquin County Superior Court, California.  (FAC, Ex. 129, ECF No. 21-25.)  The

24   FAC alleges seven causes of action consisting of: strict products liability; strict products liability

25   of components; violations of California Building Standards set forth in California Civil Code §

26   896; breach of implied warranties of merchantability; breach of contract; negligence; and breach

27   of express warranty.  (ECF No. 21-25.)  Berry involved fifty-nine residences, each of which was

28   completed and closed escrow on or before April 18, 2003.  (Berry Homeowners Matrix, Ex. 133,

ECF No. 21-26 at 37–44.)  The FAC alleged that the properties were defective and unfit for their

intended purposes at the time construction was completed.  (ECF No. 21-25 at 7, ¶ 14.)

> Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects which have resulted in damage to the homes and their component parts.   The defects include, without limitation and to various degrees on the plaintiffs' respective residences, the following:
>
> Faulty soil compaction, faulty existing underlying soils and expansive soils resulting in soil movement and damage to the structures, concrete slabs, flatwork and foundation defects; plumbing defects; electrical defects; drainage defects; roof defects; HVAC defects; waterproofing defects; window and door defects; landscaping and irrigation defects; framing, siding and structural defects; ceramic tile, vinyl flooring and countertop defects; drywall defects; fence and retaining wall defects; cabinet and wood trim defects; fireplace and chimney defects; tub and shower door defects; painting defects; sheet metal defects; and stucco defects.

(ECF No. 21-25 at 7, ¶ 14.)  Thus, the FAC alleged that the homes were defective upon

completion, and that such defects existed at least five years prior to the inception of the October

2009 insurance policy.  The FAC does not allege any facts that would support that the alleged

damage in this litigation was the result of a sudden occurrence or accident.  Therefore, these

claims are excluded under CP Exclusion 1 and/or 2 because the defects existed prior to the policy.

Based on the evidence provided, the Court finds that Defendant reasonably determined that it did

not owe a duty to defend based on the evidence before it, as is required under the law. *See Horace

Mann Ins. Co.*, 4 Cal. 4th at 1081.  Thus, the Court grants Defendant's motion for summary

judgment as to Plaintiffs' Fifty-second through Fifty-fourth Causes of Action.

ix.    *Bell*

The Complaint for Damages in the Bell litigation was filed on June 20, 2011, in

Sacramento County Superior Court, California.  (Compl., Ex. 137, ECF No. 21-26 at 76.)  The

Complaint alleges three causes of action: strict products liability; breach of implied warranties of

merchantability; and negligence.  (ECF No. 21-26 at 76.)   The Bell litigation involved six

residences, all of which were completed on or before April 3, 2003.  (Bell Homeowners Matrix,

Ex. 140, ECF No. 21-27 at 4.)  Of the six residences, one of the homeowners was the original

owner and closed escrow on the property in 2001.  (ECF No. 21-27 at 4.)  The remaining five

residences were owned by subsequent purchasers who closed escrow on the homes on or before

December 5, 2008.  (ECF No. 21-27 at 4.)  The Complaint alleged that the properties were

defective and unfit for their intended purposes at the time construction was completed.  (ECF No.

21-26 at 79, ¶ 13.)

> Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects which have resulted in damage to the homes and their component parts.  The defects include, without limitation and to various degrees on the plaintiffs' respective residences, the following:
>
> Faulty soil compaction, faulty existing underlying soils and expansive soils resulting in soil movement and damage to the structures, concrete slabs, flatwork and foundation defects; plumbing defects; electrical defects; drainage defects; roof defects; HVAC defects; waterproofing defects; window and door defects; landscaping and irrigation defects; framing, siding and structural defects; ceramic tile, vinyl flooring and countertop defects; drywall defects; fence and retaining wall defects; cabinet and wood trim defects; fireplace and chimney defects; tub and shower door defects; painting defects; sheet metal defects; and stucco defects.

(ECF No. 21-26 at 79, ¶ 13.)

Because the Complaint alleged that the homes were defective upon completion, any such

defect would have existed at least by early 2003, six years prior to the inception of the October

2009 insurance policy.  The Complaint does not allege any facts that would support even an

inference that the alleged damage in this litigation was the result of a sudden occurrence or

accident.  Therefore, these claims fall squarely within CP Exclusion 1 and/or 2 because the

defects existed prior to the policy.  Based on the evidence provided, the Court finds that

Defendant reasonably determined that it did not owe a duty to defend based on the evidence

before it, as is required under the law. *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081.  Thus, the

Court grants Defendant's motion for summary judgment as to Plaintiffs' Fifty-fifth through Fifty-

seventh Causes of Action.

> x.      *Chess*

The First Amended Complaint ("FAC") in the Chess litigation was filed on December 29,

2010, in Yolo County Superior Court, California.  (FAC, Ex. 143, ECF No. 21-27 at 23.)  The

FAC alleges six causes of action consisting of: strict products liability; strict products liability of

components; breach of implied warranties of merchantability; breach of contract; negligence; and breach of express warranty.  (ECF No. 21-27 at 23.)  Chess involved twelve residences, each of which was completed and closed escrow on or before November 11, 2002.  (Chess Homeowners Matrix, Ex. 146, ECF No. 21-27 at 57–58.)  The FAC alleged that the properties were defective and unfit for their intended purposes at the time construction was completed.  (ECF No. 21-27 at 27, ¶ 18.)

> Defendants did not construct the PROPERTY in a workmanlike manner as manifested by, but not limited to, numerous defects which have resulted in damage to the homes and their component parts.  The defects include, without limitation and to various degrees on the plaintiffs' respective residences, the following:
>
> Faulty soil compaction, faulty existing underlying soils and expansive soils resulting in soil movement and damage to the structures, concrete slabs, flatwork and foundation defects; plumbing defects; electrical defects; drainage defects; roof defects; HVAC defects; waterproofing defects; window and door defects; landscaping and irrigation defects; framing, siding and structural defects; ceramic tile, vinyl flooring and countertop defects; drywall defects; fence and retaining wall defects; cabinet and wood trim defects; fireplace and chimney defects; tub and shower door defects; painting defects; sheet metal defects; and stucco defects.

(ECF No. 21-27 at 27, ¶ 18.)  The Complaint further alleges negligence based on the same theory that the properties were negligently constructed and that such negligence is the proximate cause of the defects in the residences.  (ECF No. 21-27 at 33, ¶¶ 52–53.)

The FAC states that the homes were defective upon completion, and thus any defect would have existed at least by the end of 2002, roughly seven years prior to the inception of the October 2009 insurance policy.  The FAC does not allege any facts that would support that the alleged damage in this litigation was the result of a sudden occurrence or accident.  In fact, the allegations support the opposite.  Therefore, these claims fall squarely within CP Exclusion 1 and/or 2 because the defects existed prior to the policy.  Based on the evidence provided, the Court finds that Defendant reasonably determined that it did not owe a duty to defend based on the evidence before it. *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1081.  Thus, the Court grants Defendant's motion for summary judgment as to Plaintiffs' Fifty-eighth through Sixtieth Causes of Action.

1

xi.     *Morataya*

2

The Morataya Complaint was filed on January 14, 2011, in Sacramento Superior Court,

3

California.  (Compl., Ex. 150, ECF No. 21-28 at 19.)  Unlike the previous cases, this case was

4

brought by a single homeowner alleging that defective construction caused a fire in the home on

5

December 22, 2010.  Morataya alleged causes of action for strict liability, strict product liability,

6

negligence, negligence per se, and breach of contract.  (*See* Cross-compl., Ex. 151, ECF No. 21-

7

28 at 32, ¶ 31.)

8

Defendant asserts that the work on the home was completed prior to the policy inception

9

and thus is excluded under CP Exclusions 1 and 2.  (ECF No. 201- at 15–17.)  Furthermore,

10

Defendant states that the fire occurred after the expiration of the policy on October 21, 2010, and

11

thus any damage from the December 22, 2010 fire is beyond the scope of the policy.  (ECF No.

12

201- at 17–18.)  Plaintiffs response is limited to "[f]inally, as to Morataya, Ironshore['s]

13

contention that the damages at issue were limited to a fire occurring outside of its policy is

14

misplaced as allegations of damages unrelated to the fire were alleged."  (ECF No. 25 at 17; *see*

15

*also* ECF No. 26 at 17 (alleging the exact same thing about Morataya in Pls' Mot. for Summ. J.).)

16

The residence was completed on January 24, 2001.  (Not. of Completion, Ex. 152, ECF

17

No. 21-28 at 58.)  The Court is in receipt of the original Complaint in this action.  The original

18

Complaint alleged three causes of action: breach of contract, negligence, and strict liability.[8]

19

(ECF No. 21-28 at 19–24.)  In the Cross-complaint provided to the Court, Plaintiff Lennar states

20

that the First Amended Complaint ("FAC") alleges six causes of action: strict liability, strict

21

product liability, negligence, negligence per se, and breach of contract.  (*See* Cross-compl., Ex.

22

151, ECF No. 21-28 at 32, ¶ 31.)  The Court is not in receipt of the FAC.  The original Complaint

23

seems to rely on a legal theory that the property was defectively constructed.  (*See* ECF No. 21-28

24

at 24 ("On December 22, 2010, the residential structure which was designed, built, developed,

25

and sold by Defendants, and each of them, to Plaintiffs was the subject of a significant structure

26

fire, the genesis of which was a defectively designed and constructed chimney.").)  However, this

27

28

[8]     The Court notes that the original Complaint lists a first, second, and fourth cause of action.  Upon first glance, it seems that there is a page missing from the Complaint.  However, after further review, it appears that the Morataya plaintiffs misnumbered their causes of action.

1  Court cannot determine whether the Morataya plaintiffs made any allegations about a sudden or

2  accidental occurrence that may have caused the fire without viewing the operative complaint, in

3  this case the FAC.  Thus, the Court cannot make a determination as to whether Defendant

4  reasonably determined that it did not owe a duty to defend.  As such, the Court finds that

5  Defendant has not met its burden as to Plaintiffs' causes of action relating to the Morataya

6  litigation and hereby denies Defendant's motion for summary judgment as to Plaintiffs' Sixty-

7  first through Sixty-third Causes of Action.  For the same reason, the Court cannot conclude that

8  Plaintiffs are owed summary judgment on these claims and thus the Court denies Plaintiffs' cross-

9  motion for summary judgment as to Plaintiffs' Sixty-first through Sixty-third Causes of Action.

10  **IV.**  **CONCLUSION**

11  For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is

12  **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Cross-motion for Summary

13  Judgment (ECF No. 26) is **DENIED**:

14  (1) Defendant's Motion for Summary Judgment as to Plaintiffs' First through Sixtieth

15  Causes of Action is **GRANTED**.

16  (2) Defendant's motion for Summary Judgment as to Plaintiffs' Sixty-first through Sixty-

17  third Causes of Action is **DENIED**.

18  IT IS SO ORDERED.

19

20  Dated: October 28, 2016

21

22

23  Troy L. Nunley
United States District Judge

24

25

26

27

28